UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-12142GAO

```
****************************
LISA A. LEGER,              *
     Plaintiff              *
                            *
v.                          *
                            *
MARK J. LEGER, individually and as  *
TRUSTEE OF MAD/NAT REALTY   *
TRUST and MAT/NAT II REALTY *
TRUST, LEO LEGER, and ELLA LEGER, *
     Defendants             *
****************************
```

## MOTION TO REMOVE MARK J. LEGER AS TRUSTEE OF MAD/NAT REALTY TRUST AND MAD/NAT II REALTY TRUST, AND TO APPOINT RECEIVER

NOW COMES Lisa A. Leger, the Plaintiff in the above referenced matter, and moves this Honorable Court to remove Mark J. Leger as Trustee of Mad/Nat Realty Trust and Mad/Nat II Realty Trust, and appoint a disinterested party as a receiver of rents for the properties owned by Mad/Nat Realty Trust and Mad/Nat II Realty Trust.

In support thereof, Plaintiff submits the attached Memorandum of Law, as well as her Affidavit.

WHEREFORE, Lisa A. Leger, respectfully requests an order of this court removing Mark J. Leger as Trustee of Mad/Nat Realty Trust and Mad/Nat II Realty Trust and appointing a third party neutral as successor trustee and receiver to receive the rents generated from the Properties and pay the expenses related to the Properties.

REQUEST FOR ORAL ARGUMENT

Lisa A. Leger, hereby requests an opportunity to be heard by the court on all issues set forth in the above motion.

8. Article Second states as follows: "The Trustee...shall hold said real estate...for the benefit of the persons hereinafter named as beneficiaries...".

9. Article Fourth states as follows: "...Whenever the said Trustee shall have funds in his possession...net income, not required in his sole judgment for development or improvement of the Trust property, he shall divide and pay over the same annually, or oftener, if convenient to said Trustee, to the beneficiaries... but said Trustee may, in any case, retain such an amount as he deems necessary for payment of debts and expenses of the Trust...".

Notwithstanding the trust provisions regarding the Trustee's sole powers and discretion, subsequent to the execution of the trusts, Mark began collecting and using rents from the Properties (ie: trust income) for Mark and Lisa's personal expenses, as well as for trust expenses, including improvements and repairs to the Properties. A portion of the rents received from the Properties were used to pay Leo and Ella pursuant to the Notes. Leo and Ella have never been disbursed income from the Trusts, other than monies paid on the Notes. Mark and Lisa, together, kept records of the rental income produced from the Properties.

On or about January 29, 2003, Mark Leger (hereinafter "Mark") filed a Complaint for Divorce against Lisa Leger (hereinafter "Lisa") in the Middlesex Probate and Family Court, Docket No. 03D-0305 (hereinafter the "Divorce Action"), which action is pending.

Subsequent to Mark's filing for divorce in January 2003, Mark began collecting the rents and delivering the rents to Lisa. Lisa continued to pay the expenses related to the Properties, including the bank mortgages and the money due on the Notes to Leo and Ella. The money to

3

pay these expenses was derived solely from the rents of the Properties, delivered from Mark to Lisa.

Due to the contentious nature of the Divorce Action, Mark began failing to deliver all rents to Lisa resulting in a shortage of money available to pay the expenses of the Properties. An evidentiary hearing was held in the Divorce Action to resolve these issues. Pursuant to an order of the Middlesex Probate and Family Court (J. Dilday), dated June 8, 2004 (hereinafter the "Probate Order"), Mark is ordered to collect the rents from all the Properties (including a property located on Crescent Street, which is held in another trust) and deliver all the rents to Lisa. Lisa is ordered to pay the expenses related to the Properties from the delivered rents. *See Exhibit "C."*

Even after the issuance of the Probate Order, Mark continued to collect the rents from the Properties, but failed to deliver all the rents to Lisa. Notwithstanding the language in the Trusts related to Trustee powers, prior to and subsequent to the divorce, Lisa paid the expenses related to the marital home, as well as the Properties, in that she physically wrote the checks and managed the payment of bills related to the Properties. Due to Mark's continued failure to deliver all of said rents to Lisa, and due to the fact that the expenses were paid solely from the rents, there was not enough money available to pay all the expenses related to the Properties, including the Notes.

Additionally, several months ago, Mark allowed his brother to live rent free in one of the units on Maple Street, which unit would command, and has in the past, approximately $850 per month. This action was not consented to by Lisa. Moreover, Mark lives rent free in one of the

4

units on Francis Street. This lack of money every month has further cause an inability to pay the expenses.

Mark has refused and failed to repair water leaks in the Properties, causing a water lien to be placed on the Properties by the City of Waltham. Currently, there are new outstanding water bills for several thousand dollars, due to the leaks, which cannot be paid, due to Mark's failure to deliver all the rents.

Leo and Ella, by and through their Answer to Plaintiff's complaint in this action, have stated that Mark and Lisa are in default on the Notes and are claiming that Mark and Lisa do not own an interest in the Properties due to said default.

On September 20, 2004, the Probate Court, on Lisa Leger's motion, issued a Temporary Restraining Order against Mark J. Leger, individually, and as trustee of the Trusts, and Leo Leger and Ella Leger (*see Exhibit "D"*) prohibiting them from:

> "transferring, conveying, alienating, encumbering, disposin[g] of, selling or otherwise hypothecating title to 89-91 Francis Street, Waltham, MA, 109-111 Cushing Street, Waltham, MA, 17-19 Robbins Street, Waltham, MA, 10-12 Maple Street, Waltham, Ma and 240 Crescent Street, Waltham, MA and further that they be restrained from foreclosing or taking any [o]ther action which would affect title to the properties."[1]

## ARGUMENT

A court may remove a trustee if the trustee's actions are detrimental to the interests of the beneficiaries. M.G.L.A. c. 203., sec. 12. Among a trustee's fiduciary duties to all beneficiaries

---

[1] Although the Temporary Restraining Order states that it expires on September 30, 2004, the parties, Leo Leger and Ella Leger failed to appear to oppose an extension on said date, and Mark Leger consented to an extension. Judge Judith Nelso Dilday orally extended the Order for an indefinite time or such further order of the court.

is a duty to act in good faith (Restatement, 2d, Trusts, sec. 169), and a duty to use reasonable care ( Restatement, 2d, Trusts, sec. 174).

Additionally, a trustee has a duty to preserve the trust property, including a duty to take steps to prevent loss of the property by foreclosure. Ashley v. Winkley, 209 Mass. 509, 528, 95 N.E. 932, 934 (1911). In this case, Mark has intentionally failed to deliver all trust income to Lisa in an effort to cause a default on the Notes, causing his parents, Leo and Ella, to take actions contrary to Lisa's interest. See Massa v. Stone, 346 Mass. 67, 75, 190 N.E.2d 217, 223 (1963) (trustee identifying with issues adverse to a beneficiary is cause for removal).

In addition to failing to deliver all the rents, Mark has failed to properly account for the tenants who have not paid rents, failed to timely evict tenants, failed to make necessary minor repairs (which obligation of Mark's is addressed in the Probate Order), and fails to offer a valid explanation as to the reasons the rental income varies drastically from week to week. Mark, as trustee of the Trusts has a fiduciary duty to all beneficiaries. Lisa is a beneficiary of both trusts. By failing to pay all rents as due to Lisa in order for Lisa to pay on the Notes to Leo and Ella, as well as the other expenses of the Properties, Mark is favoring one beneficiary (Leo and/or Ella) over another (Lisa) and favoring his own interests over those of a beneficiary. See Pinkowitz v. Edinburg, 22 Mass.App.Ct. 189, 189, 492 N.E.2d 113, 1158 (1986); Boston Safe Deposit & Trust Co., v. Lewis, 317 Mass. 137, 140, 57 N.E.2d 638, 640 (1944) (there can be no divided loyalty between a trustee and any of the beneficiaries). Mark knew or should have known that his parents, Leo and Ella, would act on the Notes if they were not paid and that such actions would be detrimental to Lisa. Although it could be argued that such actions would be detrimental to Mark, as he is the son of Leo and Ella, and he is seeking a divorce from Lisa, his

6

interests are divergent from Lisa's and the actions of his parents would arguably not have the same effect on him. Lisa has reason to believe that, should Leo and Ella be allowed to disregard her interest in the Properties due to any alleged default on the Notes, they will gift interest in said Properties to Mark subsequent to a resolution of the Divorce Action.

Mark's actions are a direct conflict of interest with Lisa's rights as a beneficiary of the Trusts. Mark's actions are, upon information and belief driven, in part, by his impending divorce from Lisa, and are littered with hostility. See Wilson v. Wilson, 145 Mass. 490, 14 N.E. 521 (1888) (grounds for removal if trustee is exercising discretion in a hostile manner). Mark's motive in exercising his powers as trustee and failing to deliver all rents is suspect due to the Divorce Action. His ability to remain neutral is tainted by his motives in the Divorce Action. Another court, the Middlesex Probate and Family Court, has agreed that Lisa's interest in the Properties is in jeopardy, and has issued a restraining order against Mark, limiting his powers as trustee.

As such, Mark has acted adversely to Lisa, a beneficiary of the Trusts, and has committed malfeasance, misfeasance and nonfeasance as a Trustee. (See Restatement, 3d, Trusts, sec. 183 addressing the duty of a trustee to act impartial towards all beneficiaries) In fact, due to the contentious nature of the divorce, Mark cannot reasonably be expected to exercise his powers as trustee "with desirable perspective and detachment." Shear v. Gabovitch, 43 Mass.App.Ct. 650, 685 N.E.2d 1168 (1997). By favoring one beneficiary over another, Mark, as Trustee, breached said fiduciary duty owed to Lisa as a beneficiary. Mark's removal is necessary to ensure Lisa's interest as a beneficiary is preserved. See Id. The level of hostility has reached such a point that administration of the trust cannot be properly carried out. Chase v. Pevear, 383 Mass. 350, 370,

7

419 N.E.2d 1358, 1369 (1981).

Some units of the Properties are now in disrepair and are unable to be rented, causing a loss of rental income. Mark has failed to properly invest the trust property. A component of a trustee's duty to keep the property properly invested is to preserve the property and make it productive. Restatement, 3d, Trusts, sec. 181 (trustee under duty to lease or manage income property so that it will produce income) and Restatement, 3d, Trusts, sec. 227(a)(b), the "Prudent Investor Rule."

The Properties are not as productive as they should be and are not being well preserved. See Id. There is not enough money delivered from Mark to Lisa to pay the expenses related to the Properties, as well as pay for the repairs. Every month, several mortgages are paid late, due to Mark's actions in failing to properly deliver the rents and manage the Properties. There are several vacant units which cannot be rented until minor repairs are made, which Mark has refused to do. Mark has failed to advertise the units which have been vacated, failed to evict non-paying tenants in a timely manner, failed to collect all rents owed from tenants and failed to make minor repairs to the property, all in violation of his duties as Trustee. Overall, Mark has failed to mange the Properties according the to the trust documents.

## CONCLUSION

All issues pertaining to the divorce matter, as well as the equity complaint, cannot be determined until the Properties are properly managed and every aspect of the rental of the Properties is managed and analyzed by a neutral party, including, but not limited to, the dates tenants vacate units, the payment in cash by several tenants, the arrears of tenants, the eviction of

tenants, and the advertisement of available units. Due to the contentious nature of the litigation in this matter, as well as the divorce case, it would not be prudent to allow any of the parties to act as Trustee. The appointment of a third party with experience in property management of income producing properties is essential to the proper management of the trust Properties, as well as the interests of the beneficiaries.

>                               Respectfully submitted,
>                               LISA A. LEGER
>                               By her attorneys,
>
>
>                               /s/ Andra Curtis Hutchins
>                               Andra Curtis Hutchins
>                               BBO# 630066
>                               Kerstein, Coren, Lichtenstein & Finkel, LLP
>                               60 Walnut Street, 4th Floor
>                               Wellesley, MA 02481
>                               617-965-9698

DATED: December 23, 2004


## CERTIFICATE OF SERVICE

I, Andra Curtis Hutchins, hereby certify that a true copy of the above document was served upon all counsel of record, Matthew J. Dupuy, Esq., Ardito, Sweeney, Stusc, Robertson & Dupuy, P.C., 25 Mid-Tech Drive, West Yarmouth, MA 02673 and Francis Jenney, Esq., Harnish, Jenney, Mitchell & Resh, 564 Main Street, Waltham, MA 02452 by mail this 23 day of December, 2004.

>                               /s/ Andra Curtis Hutchins
>                               Andra Curtis Hutchins

9

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

DOCKET NO. 04-12142GAO

*******************************
LISA A. LEGER,                *
    Plaintiff              *
                           *
v.                            *
                           *
MARK J. LEGER, individually and as *
TRUSTEE OF MAD/NAT REALTY     *
TRUST and MAT/NAT II REALTY   *
TRUST, LEO LEGER, and ELLA LEGER, *
    Defendants             *
*******************************

## AFFIDAVIT OF LISA A. LEGER

I, Lisa A. Leger, being first duly sworn, hereby depose and state as follows:

1. Mark Leger and I were married on November 21, 1993. We have 2 minor children: Madeline Leger, age 8 and Nathalie Leger, age 6.

2. On or about January 29, 2003, my husband filed a Complaint for Divorce in the Middlesex Probate Court, which action is pending.

3. Leo and Ella Leger (hereinafter "Leo and Ella") are Mark's parents.

4. Prior to the divorce action, on or about May 1999 and November, 2000, Mark, Leo and Ella and I engaged in several real estate transactions at the law offices of Harnish, Jenney, Mitchell & Resh (hereinafter the "Law Firm"), in Waltham, Middlesex County, Massachusetts. The documents prepared included two real estate trusts: Mad/Nat Realty Trust and Mad/Nat II Realty Trust.

5. On the same dates in 1999 and 2000 that the trusts were prepared and signed, Mark and I signed two Promissory Notes (hereinafter the "Notes") to Leo and Ella.

6. Mark is the trustee of both trusts. I am a beneficiary of both trusts.

7. Title to 89-91 Francis Street, Waltham, Massachusetts, and 109-111 Cushing Street, Waltham, Massachusetts, is held by Mad/Nat Realty Trust. Title to 17-19 Robbins Street, Waltham, Massachusetts and 10-12 Maple Street, Waltham, Massachusetts is held by Mad/Nat II Realty Trust.

8. The Properties are income producing rental properties. Francis Street and Cushing Street are 4 family houses, Robbins Street is comprised of two 6 family houses and Maple Street is an 11 unit rooming house. All the properties are encumbered by bank mortgages.

9. After the execution of the documents in May 1999 and November 2000, Mark and I began collecting and using rents from the Properties for our expenses, as well as for expenses of the Properties, including paying Leo and Ella pursuant to the Notes. Mark and I kept track of the rental income produced from the Properties. I paid the expenses related to the marital home (title to which is not in trust), as well as the Properties, in that I physically wrote the checks and managed the payment of expenses related to the Properties. To the best of my knowledge, Leo and Ella never received any income from the rents other than the monies we paid them pursuant to the Notes. Leo and Ella never questioned how the rental income was used or for what purpose.

10. After my husband filed for divorce in January 2003, Mark continued to collect the rents from the Properties and I continued to pay the mortgage of the marital home, as well as all the expenses related to the Properties, including the bank mortgages and the money due on the Notes to Leo and Ella. The monies used to pay these expenses was derived solely from the rents of the Properties, delivered from Mark to me.

11. However, after January 2003, Mark failed to deliver all the rental income to me. Due to Mark's continued failure to deliver all of the rents to me, and due to the fact that the expenses were paid solely from the rents, there was not enough money available to pay all the expenses related to the Properties, including the Notes.

12. There is a court order from the Probate Court, dated June 8, 2004, ordering Mark to collect and deliver all rental income to me, and ordering me to pay the expenses of the Properties from the rental income. Mark has failed to abide by this order.

13. In his duties as trustee, Mark has failed to timely deliver the rents to me so that the expenses are timely paid, failed to properly account for tenants who have not paid rent, failed to timely evict tenants, failed to make minor necessary repairs so that vacant apartments can be rented, and failed to offer a valid explanation as to the reasons the rental income varies drastically from week to week.

14. Additionally, Mark has allowed his brother, Charles Leger, to live rent free in one of the rental units on Maple Street, without my consent. If a tenant was paying for this apartment, we would be receiving another $850 per month. Mark is also living rent free in one of the units on Francis Street. This lack of money every month has further caused an inability to pay the expenses.

15. Mark has also neglected water leaks and allowed them to continue without repair in the Properties, causing a water lien to be placed on the Properties by the City of Waltham last year. Currently, there are water bills totaling several thousand dollars and not enough

money from the rents to pay them.

16.     I kept current on the Notes to Leo and Ella until November 2004. Due to our recent inability to keep current on the payments on the Notes, Leo and Ella have claimed that I have no longer have an interest in the Robbins Street and Maple Street properties (title to which is held by Mad/Nat II).

17.     As the divorce between my husband and I has been particularly adversarial and hostile, I believe Mark has acted contrary to my interests as a beneficiary and intentionally failed to deliver all rental income to me in an effort to cause a default on the Notes, causing his parents, Leo and Ella, to take actions contrary to my interest, and causing me to potentially lose some of the marital interest to which I would be entitled.

Signed under the pains and penalties of perjury this 23 day of December, 2004.

_____
Lisa A. Leger

EXHIBIT A 1-2

BK31430PG189

DECLARATION OF TRUST made this 15th day of May, 1999 by MARK J. LEGER, hereinafter referred to as "the Trustee".

The Trustee hereby DECLARES that he and his successors in trust will hold any and all of the property that may be transferred to or acquired by him in his capacity as Trustee, (hereinafter referred to as "the Trust Premises") in trust for the purposes hereinafter contained:

NOW, THEREFORE, said MARK J. LEGER, (hereinafter with his successors in trust called the "Trustee") declares and agrees that he shall hold and administer the property which is now or hereafter may be transferred to him as such Trustee, or in any way acquired and held hereunder, and will hold the proceeds of any insurance payable to the trust IN TRUST for the purposes, in the manner and with and subject to the powers and provisions herein contained as follows:

FIRST: This trust is revocable in accordance with the provisions of Article SEVENTH and shall be known as the "MAD/NAT REALTY TRUST" and may be referred to as such.

SECOND: The Trustee and his successors, shall hold said real estate and personal property and any real estate, personal property or interest therein hereafter acquired under this Trust, subject to the provisions of this instrument in order to improve and dispose of the same for the benefit of the persons hereinafter named as beneficiaries, and his respective representatives and assigns, devisees or legatees, in the shares hereinafter provided.

THIRD: (a) The Trustee shall have as full power and discretion as if he were the absolute owner of said Trust property, to invest and reinvest the Trust property including also income in real estate, personal property of any nature, securities, and in mortgages, bonds, notes or other obligations secured upon real estate, and in the purchase and improvement of real estate wherever situated. All real estate or personal property or interest therein so purchased or assigned shall be conveyed or transferred to him as Trustee hereunder.

(b) The Trustee shall have full power and discretion as if absolute owner of said Trust property to sell, transfer and convey, from time to time, at public or private sale, any part or all of the Trust property upon such terms and conditions as he shall see fit, and to invest the proceeds in the same manner and upon the same trusts as the original Trust estate.

(c) Without in any manner limiting the powers of the Trustee as hereinbefore provided in paragraph (b), it is expressly declared that said Trustee shall have absolute control over and power to dispose of all real estate held by him at any time under this Trust, including therein powers to sell and convey in fee simple or for any less estate free and discharged of all trusts, at public auction or by private sale, either for cash or upon credit or partly for cash and partly for credit, and to receive, assign, give partial releases from or discharge any mortgage taken as part consideration for such sale or sales, to this Trust or for any less term, to hire for improvement or otherwise, to lease for such times and in such terms as him may deem advisable and regardless of whether the lease may extend beyond the term of

the trust, to exchange, to release, to partition, and to make, execute, acknowledge and deliver all necessary deeds, agreements and other instruments relating to the Trust estate.

(d) The Trustee may borrow money for such time and upon such terms as he shall see fit and may secure the payment of any money borrowed by mortgage or mortgages or pledge or pledges of any part or all of said Trust property, said mortgages to be drawn either with or without a power of sale clause, and said Trustee in his discretion may pledge as collateral security for any loan, any mortgage, mortgages, lease or leases forming part of the Trust property. The Trustee shall execute and deliver such notes or other evidence of indebtedness as may be necessary in the premises.

(e) The Trustee shall have full power to cancel and discharge mortgages by deed or otherwise in payment or satisfaction thereof. The execution by the Trustee of all contracts, of all conveyances and transfers, and of any and all other instruments relating to the Trust property, or any part thereof, shall be deemed sufficient.

(f) At any time during the continuance of the Trust, the Trustee may act and determine all questions hereunder, may make sales, borrow money, execute deeds, mortgages and other instruments, and may exercise all and every power, right, interest and discretion herein given or imposed upon said Trustee.

(g) The Trustee is expressly authorized to deal with himself or with any other concern in which he may be interested, as freely and effectively as if dealing with a stranger, and no purchaser, lender, or transfer agent shall be bound to make any inquiry concerning any conveyance, sale, pledge, mortgage loan or purchase authorized by this subparagraph.

(h) All powers given the Trustee by any section of this Declaration may be exercised by a majority of his number in office at the time of such exercise in the event there be more than one Trustee. One Trustee may discharge any mortgage, acknowledge any instrument or receipt for any funds or property.

(i) The Trustee may from time to time delegate in writing the power to sign checks and the custody of the Trust fund to one Trustee in the event there be more than one Trustee for such periods of periods of time as he may determine.

FOURTH: Whenever the said Trustee shall have funds in his possession, the proceeds of sales or otherwise, or net income, not required in his sole judgment for development or improvement of the Trust property, he shall divide and pay over the same annually, or oftener, if convenient to said Trustee, to the beneficiaries and their representatives and assigns; but said Trustee may, in any case, retain such an amount as he deems necessary for payment of debts and expenses of the Trust whether due and payable or future and contingent.

FIFTH: (a) The entire beneficial interest of this Trust hereinafter referred to as the "Beneficiaries" shall be vested in the persons named in a Schedule of Beneficiaries filed with the Trustee, in the proportions therein set forth; and.

(b) The term "Beneficiaries" wherever used herein shall mean the persons named in the Schedule of Beneficial Interests referred to above as it may be amended by the Trustee and the Beneficiaries from time to time. Any Trustee may,

BK31430PG191

without impropriety, be or become a Beneficiary hereunder and exercise all rights of a Beneficiary with the same effect as though he were not a trustee.

SIXTH: The Trustee shall have no power to bind the Beneficiary personally, and in every written contract made by said Trustee reference shall be made to this Declaration of Trust and the person or persons or corporation so contracting or dealing with the Trustee shall look to only the funds and property of the Trust for payment under any contract, or for payment of any debts, damage, judgment or decree or of any money that may otherwise come due and payable by reason of the failure on the part of the Trustee, and neither the Trustee nor the beneficiary, present or future, shall be personally liable therefor.

No Trustee hereunder shall be liable for any error of judgment nor for any loss arising out of any act or omission in good faith, but shall be responsible only for his own willful breach of trust. No license of court shall be requisite to the validity of any transaction entered into by the Trustee. No purchaser, transferee, pledgee, mortgagee or other lender shall be under any liability to see to the application of the purchase money or of any money or property loaned or delivered to any Trustee or to see that the terms and conditions of this Trust have been complied with. Every agreement, lease, deed, mortgage or other instrument or document executed or action taken by the Trustee or a majority of the persons appearing of record to be Trustee hereunder shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that at the time of the delivery thereof or of the taking of such action this Trust was in full force and effect, that the Trustee's execution and delivery thereof or taking of such action was duly authorized, empowered and directed by the Beneficiary, and that such instrument or document or action taken is valid, binding, effective and legally enforceable. Any person dealing with the Trust Estate or the Trustee may always rely without further inquiry on a certificate signed by any person appearing from the records of the Registry of deeds to be a Trustee hereunder as to who is or are the Trustee or Trustees, or the Beneficiary hereunder, or as to the authority of the Trustee to act or as to the existence or non-existence of any fact or facts which constitute conditions precedent to acts by the Trustee or which are in any other manner germane to the affairs of the Trust.

SEVENTH: The Beneficiaries shall have the power, at any time or from time to time, to alter, amend or revoke, in whole or in part, the terms and provisions of this Declaration of Trust and the trusts hereby created, by a signed instrument in writing, acknowledged before a notary public, and delivered to the Trustee. The Trustee shall record in the appropriate Registry of Deeds wherever trust real estate is situated a certificate of amendment setting forth those terms and provisions amended by the Beneficiary and said certificate shall be binding as provided in Article Sixth. In the event that the Beneficiaries shall revoke this trust, the Trustee shall transfer and pay over the trust property, or the portion thereof to which said revocation is applicable, to the Beneficiaries as may be directed in writing.

EIGHTH: The Trustee and any successor Trustee hereunder may resign his Trust by written instrument signed and sealed by them and acknowledged in the manner prescribed for the acknowledgment of deeds, and such instruments shall be recorded in the appropriate Registry of Deeds wherever Trust real estate is situated.

BK31430PG192

Mark J. Leger, hereinafter referred to as the original Trustee, may at any time and from time to time while serving as Trustee hereunder, appoint or revoke the appointment of additional or successor Trustees.

Subject to the foregoing powers of the original Trustee to appoint successor Trustees and additional Trustees, vacancies in the Trusteeship shall be filled in the following manner: If and when the original Trustee ceases to act as Trustee hereunder, then the majority in interest of the beneficiaries shall appoint a successor Trustee. With respect to any vacancy not filled as hereinbefore provided, such vacancy shall be filled by any court of proper jurisdiction.

Except in the case of an appointment by a court, any appointment, revocation or removal of a Trustee shall be in writing and duly signed, acknowledged and recorded at the appropriate Registry of Deeds wherever trust real estate is situated. Pending the qualification of any successor or additional Trustee, the Trustee then in office shall have all the powers, discretions and exemptions given to the Trustee.

If any individual trustee of this trust shall become incapable of performing the duties of a Trustee by reason of advanced age or mental or physical incapacity, it shall not be necessary for such Trustee to resign or be removed as Trustee; instead, the determination in writing of such incapacity by all of the other Trustee then serving hereunder, if made in good faith and if supported by a certificate to that effect by a duly registered physician, shall terminate such Trusteeship and shall be binding upon all persons interested when properly recorded in the appropriate Registry of Deeds wherever trust real estate is situated.

NINTH: The Trustee may terminate this Trust at any time by sale of the Trust estate and division of the proceeds thereof among the Beneficiaries and their respective representatives, assigns, legatees or devisees in the shares hereinbefore provided, being first duly indemnified for any outstanding obligation or liability, and shall thereupon be forthwith discharged.

TENTH: Notwithstanding anything herein contained to the contrary, unless sooner terminated under the prior provisions hereof, all trusts hereunder shall terminate twenty-one (21) years after the death of the original Trustee and the successor Trustee shall distribute the trust property then existing hereunder and any undistributed income to the persons then entitled to receive the income therefrom.

ELEVENTH: The Trustee shall be entitled to reasonable compensation as Trustee for the care and management of the Trust property.

TWELFTH: The interests of the beneficiaries herein in principal or income of this Trust shall not in any way during their lifetime be subject to the claims of their creditors or others, nor to legal process and may not be voluntarily or involuntarily alienated, encumbered, assigned or otherwise transferred or encumbered.

THIRTEENTH: This Trust shall be interpreted in accordance with the laws of the Commonwealth of Massachusetts and its validity and administration shall be governed by said laws except with respect to such assets as are required by law to be governed by the laws of some other jurisdiction.

BK31430PG193

IN WITNESS WHEREOF, the said Trustee has hereunto set his hand and seals this <u>15th</u> day of <u>May</u>, 1999.

_____
Mark J. Leger, Trustee as Aforesaid

### COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.                                                                 May 15, , 1999

Then personally appeared Mark J. Leger, Trustee as aforesaid, and acknowledged the foregoing instrument to be his free act and deed, before me,

_____
Joseph Melone, Notary Public
My Commission expires: 9/15/2000

Trust/Leger

## MAD/NAT REALTY TRUST
### SCHEDULE OF BENEFICIAL INTERESTS

The undersigned, being the Trustee and Beneficiaries of the MAD/NAT REALTY TRUST under a Declaration of Trust dated May 15, 1999, hereby certify that the following is a complete list of the Beneficiaries of said Trust and their proportionate interest as of this date.

| Names of Beneficiaries | Fractional Interest |
|---|---|
| Leo P. Leger and Ella M. Leger, as Joint Tenants | Fifty (50%) Percent; |
| Mark J. Leger and Lisa A. Leger, as Joint Tenants | Fifty (50%) Percent. |

The terms of the Declaration of Trust to which this is a schedule are hereby approved and the above-named Beneficiaries, in consideration of the execution of said Trust for ourselves, our heirs and assigns, agree with the Trustees to be bound by said Trust.

WITNESS the execution hereof to take effect as a sealed instrument this 15th day of May, 1999.

_____
Mark J. Leger, Trustee and Beneficiary

_____
Leo P. Leger, Beneficiary

_____
Ella M. Leger, Beneficiary

_____
Lisa A. Leger, Beneficiary

### COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss:                                      May 15, 1999

Then personally appeared the above-named Mark J. Leger, Trustee and Beneficiary, Leo P. Leger, Beneficiary, Ella M. Leger, Beneficiary and Lisa A. Leger, Beneficiary and acknowledged the foregoing instrument to be their free act and deed, before me,

_____
Joseph Melone, Notary Public
My Commission expires: 9/15/2000

BK32190PG390

05

DECLARATION OF TRUST made this 7th day of November, 2000 by MARK J. LEGER, hereinafter referred to as "the Trustee":

The Trustee hereby DECLARES that he and his successors in trust will hold any and all of the property that may be transferred to or acquired by him in his capacity as Trustee, (hereinafter referred to as "the Trust Premises") in trust for the purposes hereinafter contained:

NOW, THEREFORE, said MARK J. LEGER, (hereinafter with his successors in trust called the "Trustee") declares and agrees that he shall hold and administer the property which is now or hereafter may be transferred to him as such Trustee, or in any way acquired and held hereunder, and will hold the proceeds of any insurance payable to the trust IN TRUST for the purposes, in the manner, and with and subject to the powers and provisions herein contained as follows:

FIRST: This trust is revocable in accordance with the provisions of Article SEVENTH and shall be known as the "MAD/NAT II REALTY TRUST" and may be referred to as such.

SECOND: The Trustee and his successors, shall hold said real estate and personal property and any real estate, personal property or interest therein hereafter acquired under this Trust, subject to the provisions of this instrument in order to improve and dispose of the same for the benefit of the persons hereinafter named as beneficiaries, and his respective representatives and assigns, devisees or legatees, in the shares hereinafter provided.

THIRD: (a) The Trustee shall have as full power and discretion as if he were the absolute owner of said Trust property, to invest and reinvest the Trust property including also income in real estate, personal property of any nature, securities, and in mortgages, bonds, notes or other obligations secured upon real estate, and in the purchase and improvement of real estate wherever situated. All real estate or personal property or interest therein so purchased or assigned shall be conveyed or transferred to him as Trustee hereunder.

(b) The Trustee shall have full power and discretion as if absolute owner of said Trust property to sell, transfer and convey, from time to time, at public or private sale, any part or all of the Trust property upon such terms and conditions as he shall see fit, and to invest the proceeds in the same manner and upon the same trusts as the original Trust estate.

(c) Without in any manner limiting the powers of the Trustee as hereinbefore provided in paragraph (b), it is expressly declared that said Trustee shall have absolute control over and power to dispose of all real estate held by him at any time under this Trust, including therein powers to sell and convey in fee simple or for any less estate free and discharged of all trusts, at public auction or by private sale, either for cash or upon credit or partly for cash and partly for credit, and to receive, assign, give partial releases from or discharge any mortgage taken as part consideration for such sale or sales, to this Trust or for any less term, to hire for improvement or otherwise, to lease for such times and in such terms as him may deem advisable and regardless of whether the lease may extend beyond the term of

1

BK 32190 PG 391

the trust, to exchange, to release, to partition, and to make, execute, acknowledge and deliver all necessary deeds, agreements and other instruments relating to the Trust estate.

(d) The Trustee may borrow money for such time and upon such terms as he shall see fit and may secure the payment of any money borrowed by mortgage or mortgages or pledge or pledges of any part or all of said Trust property, said mortgages to be drawn either with or without a power of sale clause, and said Trustee in his discretion may pledge as collateral security for any loan, any mortgage, mortgages, lease or leases forming part of the Trust property. The Trustee shall execute and deliver such notes or other evidence of indebtedness as may be necessary in the premises.

(e) The Trustee shall have full power to cancel and discharge mortgages by deed or otherwise in payment or satisfaction thereof. The execution by the Trustee of all contracts, of all conveyances and transfers, and of any and all other instruments relating to the Trust property, or any part thereof, shall be deemed sufficient.

(f) At any time during the continuance of the Trust, the Trustee may act and determine all questions hereunder, may make sales, borrow money, execute deeds, mortgages and other instruments, and may exercise all and every power, right, interest and discretion herein given or imposed upon said Trustee.

(g) The Trustee is expressly authorized to deal with himself or with any other concern in which he may be interested, as freely and effectively as if dealing with a stranger, and no purchaser, lender, or transfer agent shall be bound to make any inquiry concerning any conveyance, sale, pledge, mortgage loan or purchase authorized by this subparagraph.

(h) All powers given the Trustee by any section of this Declaration may be exercised by a majority of his number in office at the time of such exercise in the event there be more than one Trustee. One Trustee may discharge any mortgage, acknowledge any instrument or receipt for any funds or property.

(i) The Trustee may from time to time delegate in writing the power to sign checks and the custody of the Trust fund to one Trustee in the event there be more than one Trustee for such periods of periods of time as he may determine.

FOURTH: Whenever the said Trustee shall have funds in his possession, the proceeds of sales or otherwise, or net income, not required in his sole judgment for development or improvement of the Trust property, he shall divide and pay over the same annually, or oftener, if convenient to said Trustee, to the beneficiaries and their representatives and assigns; but said Trustee may, in any case, retain such an amount as he deems necessary for payment of debts and expenses of the Trust whether due and payable or future and contingent.

FIFTH: (a) The entire beneficial interest of this Trust hereinafter referred to as the "Beneficiaries" shall be vested in the persons named in a Schedule of Beneficiaries filed with the Trustee, in the proportions therein set forth; and.

(b) The term "Beneficiaries" wherever used herein shall mean the persons named in the Schedule of Beneficial Interests referred to above as it may be amended by the Trustee and the Beneficiaries from time to time. Any Trustee may,

2