IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12142GAO

| | |
|---|---|
| LISA A. LEGER,<br>　　Plaintiff,<br><br>vs.<br><br>MARK J. LEGER, Individually and as<br>Trustee under the Mad/Nat Realty Trust<br>and the Mad/Nat II Realty Trust,<br>LEO LEGER, and<br>ELLA LEGER,<br>　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, LEO AND ELLA LEGER'S, OPPOSITION TO PLAINTIFF'S MOTION TO APPOINT RECEIVER

### FACTS

For the purposes of this opposition, Defendants, Leo and Ella Leger, admit so much of the facts contained in plaintiff's motion as relate to plaintiff's request for the removal of Mark J. Leger as Trustee of the Mad/Nat I and II Realty Trusts.

### LAW

Generally, the decision whether to appoint a receiver rests in the sound discretion of the court. Lopez v. Medford Community Center, Inc., 384 Mass. 163, 169 (1981). But since it interferes with one's property interests, the appointment of a receiver is an extraordinary remedy to be viewed as a last resort. Perez v. Boston Housing Authority, 379 Mass. 703, 733, 736 (1980); Lopez, supra at 169. A receiver should be appointed only where there is no other way to protect the assets of the entity in question. Charlette v. Charlette Brothers Foundry, Inc., 59 Mass.App.Ct. 34 (2003).

## ARGUMENT

1. **This Honorable Court should decline to appoint a receiver over the assets of the Mad/Nat I and II Realty Trusts because Leo and Ella Leger are fully capable of assuming the role of successor trustees of these trusts and the appointment of an independent receiver would subject the realty trusts to extraordinary and unnecessary expense.**

Leo and Ella Leger hold a combined 50% beneficial interest in the Mad/Nat I and II Realty Trusts. Moreover, they are the sole holders of two promissory notes from Lisa and Mark Leger, which notes represent payment from Mark and Lisa Leger for their beneficial shares of the realty trusts. Thus, Leo and Ella Leger have an insurmountable interest is seeing that the assets of the realty trusts are preserved.

Additionally, Leo and Ella Leger owned and managed the properties held by these trusts for over twenty years before selling them to Mark and Lisa Leger in 2000. Thus, they are well-versed in the day to day affairs and management of the properties.

Finally, the appointment of an independent receiver would subject the realty trusts to extraordinary and unnecessary expense. The four properties held by the realty trusts are comprised of a total of thirty-one (31) rental units. The management of these thirty-one units is a full-time job, entailing daily visits to the properties to collect rents, oversee maintenance, conduct repairs, evict tenants and market vacant units, in addition to the simple bookkeeping tasks such as bill payment. Thus, the appointment of a receiver would entail the hiring of a full-time manager of the property at exorbitant expense, and would only serve to deplete, rather than maintain the assets held by the trusts.

WHEREFORE, Leo and Ella Leger respectfully request this Honorable Court to enter an order denying Plaintiff's Motion to Appoint Receiver.

Respectfully submitted,
Leo and Ella Leger

By their attorneys,

Matthew J. Dupuy
BBO #139000
Tracey L. Taylor
BBO #565088
ARDITO, SWEENEY, STUSSE,
ROBERTSON & DUPUY, P.C.
25 Mid-Tech Drive
West Yarmouth, MA 02673
Telephone: (508) 775-3433

Dated: January 4, 2005

### CERTIFICATE OF SERVICE

A copy of the within Defendant, Leo and Ella Leger's, Opposition to Plaintiff's Motion to Appoint Receiver and Supporting Memorandum of Law has this day been sent, postage prepaid, to all counsel of record, as follows:

Andra Curtis Hutchins, Esquire
KERSTEIN, COREN, LICHTENSTEIN & FINKEL, LLP
233 Needham Street
Newton, MA 02464; and

Francis Jenney, Esquire
HARNISH, JENNEY, MITCHELL & RESH
564 Main Street
Waltham, MA 02452.

Signed under the penalties of perjury this 4th day of January, 2005.

Tracey L. Taylor

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12142GAO

LISA A. LEGER, )
    Plaintiff, )
)
vs. )
)
MARK J. LEGER, Individually and as )
Trustee under the Mad/Nat Realty Trust )
and the Mad/Nat II Realty Trust, )
LEO LEGER, and )
ELLA LEGER, )
    Defendants. )

## AFFIDAVIT OF ELLA LEGER

I, Ella Leger, hereby depose and state as follows:

1. My husband, Leo Leger, and I, along with our son Mark Leger and his wife, Lisa Leger, each hold a 25% beneficial interest in the Mad/Nat I and II Realty Trusts.

2. Leo and I owned and managed the properties held by these trusts for over twenty years before selling them to Mark and Lisa in 2000.

3. Upon purchasing the realty trusts from us, Mark assumed the title of sole trustee of the realty trusts and, under Mark's supervision, Lisa assumed the duties of bookkeeper of the realty trust.

4. The properties were well-run by Mark and Lisa until January, 2003, when they filed for divorce.

5. After Mark and Lisa filed for divorce, the probate court judge effectively divided the management of the realty trusts by allowing Lisa to continue to serve as the

1

bookkeeper for the trusts, despite the fact that she and Mark were not communicating with each other.

5. The properties held by the realty trusts have been grossly mismanaged since Mark and Lisa filed for divorce.

6. The properties are currently running a 10% vacancy rate, which is extremely high.

7. Since their separation, Lisa has continually refused to pay for repairs and utilities and other essential items, including summary process evictions.

8. For instance, Lisa stopped paying water bills for the properties held by the trusts in 2002, when she kicked Mark out of the house. As a result, the City of Waltham added the overdue water bills, including 16% interest, to the following year's tax bill for the properties. This was then added to the bank's escrow requirement, increasing the mortgage payments on the properties by over $3,000.00 per month. This unnecessary payment totals $36,000.00 over the past twelve months.

9. During the 2003-2004 heating season, Lisa repeatedly refused to pay for oil for the 10 Maple Street property (held by Mad/Nat II realty Trust), even though the oil tank was empty and the tenants were complaining that they had no heat. Lisa also stopped paying common electric and gas for this property.

10. Beginning in May, 2004, Lisa stopped paying the insurance premiums on all of the properties held by the realty trusts. Over $10,000.00 is owed in outstanding insurance premiums.

11. At the beginning of the 2003-2004 heating season, the boiler at the 17 Robbins Street property broke down and Lisa refused to pay for a replacement. Mark had

2

to add that apartment to another unit's heating system and he increased the rents by $150.00 per month to compensate for the increased bill. Lisa never paid that bill.

12. Lisa has refused to pay suppliers' bills for the properties held by the realty trusts.

13. Lisa has refused to pay the accountant's bill for services performed for the realty trusts, despite being ordered by the probate court to do so. We paid the $900.00 due to the accountant for his services on these realty trusts.

14. The divorce stipulation states that Lisa must approve any repairs to the subject properties costing over $500.00. However, Lisa has refused to pay for numerous emergency repairs, some of which jeopardized the tenants at the subject properties.

15. For instance, she refused to approve the repair of a collapsed porch at the Francis Street property. Mark paid the $2,600.00 bill for this repair.

16. Lisa refused to approve repairs to the roof at the 19 Robbins Street property, where leaks had caused massive water damage to the third floor units. Leo and I paid the $7,200.00 bill for this repair.

17. One of the units at 19 Robbins Street in uninhabitable because of mold damage caused by the roof leak. Lisa has refused to pay for mold removal for this unit.

18. Lisa refused to approve the replacement of the fire detection system at the 10 Maple Street property, which the City of Waltham Fire Department stated had to be replaced due to the age of the system and code violations. Failure to replace the system would have resulted in the non-renewal of the rooming house license and the forced eviction of all of the tenants. The bill to replace the system totaled $3,800.00. Leo and I

3

paid $2,800.00 toward this bill and the remaining $1,000.00 was paid through a deduction from the rents due to Lisa.

19. The tenants at 17 Robbins Street are now withholding rent to pay the gas bill to insure that they have heat.

20. There is $20,000.00 in back rent owed to Mad/Nat I and II Realty Trusts. In this regard, Lisa has refused to pay for summary process actions making it impossible to evict tenants who are behind in their rent. Leo and I have paid for summary process actions against two tenants.

21. Lisa stopped paying the money due Leo and me pursuant to a collateral agreement on Mad/Nat II Realty Trust. At a contempt hearing held in the probate court on September 3, 2004, she agreed to pay an extra $500.00 per month toward the outstanding amount owed, which was $15,000.00 at that time. After the contempt hearing, Lisa resumed payments on the collateral agreement but has withheld at least $600.00 per month (She paid most of outstanding $15,000.00 by selling marital property stocks by court order). Consequently, as of this date, approximately $10,000.00 is owed to Leo and me pursuant to me pursuant to the collateral agreement on the Mad/Nat II Realty Trust.

Signed under the pains and penalties of perjury this 4th day of January, 2005.

*Ella Leger*
Ella Leger

4